JOHN H. DRAKE, Appellant, v. ROBERT SEAMAN et al., Respondents.

The effect of the amendment in 1863 of the provision of the statute of frauds, declaring certain contracts invalid unless in writing (Chap. 464, Laws of 1863), which amendment struck out the clause, requiring the consideration to be expressed in the writing, was not to destroy or annul the requirement that the writing must contain all the substantial and material terms of the contract. The writing, so far as the same is executory, must still show on its face what the whole agreement was.

*E. N. Bank* v. *Kaufmann* (93 N. Y. 273), not adverse.

The parties entered into an agreement that defendants would pay to plaintiff for his services as salesman for three years, the sums hereinafter specified. A writing was signed by the defendants as follows : "The understanding with Mr. Drake is as follows: 2,000 dollars for the first year, 2,500 dollars for the second year sure, and provided the increase of sales shall warrant it, he is to have $3,000. 3 year in proportion to business as above." The contract was performed for two years, but defendants refused to retain plaintiff in their employ for the last year. In an action to recover damages for a breach of the contract, *held*, that conceding the consideration might be wholly omitted from the memorandum, it did not meet the requirements of the statute, as the condition upon which defendants were to pay and the subject-matter of the agreement itself were omitted; and that as the parol contract was void under the statute, because not to be performed within a year, plaintiff was not entitled to recover.

(Argued October 13, 1884 ; decided November 25, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, made May 8, 1882, reversing a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 27 Hun, 63.)

This action was brought mainly to recover damages for an alleged breach of a contract of employment.

Defendants were manufacturers of milk-cans, doing business under the name of " Iron-Clad Can Co." In January, 1875, the parties entered into negotiations, which resulted in an oral agreement that plaintiff would enter into defendants' employ as a salesman, and serve in that capacity for three years. Defendant Shepard thereupon wrote the following memorandum, which he gave to plaintiff :

"( Preserve this. )

"MEMORANDUM,

"*Iron Clad Can Co.*

"JAN'Y 9th, 1875.

"The understanding with Mr. Drake is as follows: 2,000 dollars for the first year; 2,500 dollars for the second year, sure, and provided the increase sales shall warrant it, he is to have $3,000.   3 year in proportion to business as above."

The plaintiff took the memorandum home, and on the Tuesday following wrote and mailed to the defendants a letter in the following words:

"UTICA, *January* 12, 1875.

"*Iron-Clad Can Co.*, or *H. W. Shepard:*

"I accept your proposition of the ninth inst., and will be in New York on Monday next to commence operations.

"JOHN DRAKE."

Plaintiff went to work under the contract, and continued in defendants' employ until about January, 1878, when they refused to employ him or to pay him.   Plaintiff tendered his services, and remained ready and willing to perform them during the year.

*M. M. Waters* for appellant.   The words of the memorandum, "for the first year," etc., are a full and sufficient expression of the subject-matter of the contract to comply with the statute of frauds, as to the consideration for which the defendants promise to pay the money.   (Laws of 1863, chap. 464; *Speyer* v. *Lambert,* 6 Abb. Pr. [N. S.] 309; *Evansville Nat'l Bank* v. *Kauffman,* 93 N. Y. 273, 278; *Mason* v. *Decker,* 72 id. 595, 598.)   A written instrument is always to be so interpreted as to give it some effect. (*Waldron* v. *Willard,* 17 N. Y. 468.)   Parol evidence was admissible to show what services the parties intended should be performed. (*Brown* v. *Brown,* 34 Barb. 537.) The meaning of the memorandum must be determined from

the writing; the surrounding circumstances; the collateral facts, and the acts of the parties giving it practical construction. (*Waldron* v. *Willard*, 17 N. Y. 468; *Douglass* v. *Howard*, 24 Wend. 35, 42.) The evidence given to apply the language of the memorandum to the subject of the contract was entirely competent. The court will. call in aid the acts of the parties done under a contract as a clue to the intention of the parties. (*French* v. *Carhart*, 1 Com. 96, 102; *Hutchings* v. *Hebard*, 34 N. Y. 22, 24; *Barney* v. *Worthington*, 37 id. 112, 114; *Gates* v. *McKee*, 13 id. 2; *Juliand* v. *Chaffee*, 92 id. 529; *Speyer* v. *Lambert*, 6 Abb. Pr. [N. S.] 309; *Evansville Nat'l Bank* v. *Kauffman*, 93 N. Y. 273, 278; *Mason* v. *Decker*, 72 id. 595; *Gates* v. *McKee*, 13 id. 234.)

*Samuel Hand* for respondents. The pretended agreement in writing, which was introduced by the plaintiff, was in fact no agreement, and was not a note or memorandum of any agreement such as the law sustains as a legal obligation. Unless the whole agreement is in writing there is no foundation for this action. (*Wright* v. *Weeks*, 25 N. Y. 153, 157, 160–2; *Peabody* v. *Speyer*, 56 id. 230, 236; *Blossom* v. *Griffin*, 3 Kern. 569; *Stone* v. *Browning*, 68 N. Y. 598.)

Finch, J. The court below has defeated the plaintiff upon the ground that his cause of action rested upon a contract which, by its terms, was not to be performed within one year, and which was rendered void by the statute of frauds for the want of a sufficient note or memorandum. That determination is challenged upon this appeal; and it is contended on behalf of the appellant that the memorandum was sufficient, for the double reason, that no integral or material part of the agreement was omitted, but if it was, the omission was only of the consideration, which, under the statute, no longer needs to be expressed. It will be convenient to consider the last proposition first, since if it is sound it determines this appeal.

Before the Revised Statutes went into effect the consideration of an agreement within the statute of frauds was required to be stated in the memorandum. In the early case of *Wain*

v. *Walters* (5 East, 10), this was put upon the ground of a distinction between the word "agreement" and the word "promise" as used in the statute; but later, upon the proposition that the memorandum should contain within itself all the elements of a complete cause of action without need of resort to parol evidence. (*Saunders* v. *Wakefield*, 4 Barn. & Ald. 595.) Thereafter the courts in this State admitted and enforced that rule, (*Sears* v. *Brink*, 3 Johns. 210 ; *Kerr* v. *Shaw*, 13 id. 236), but held the memorandum sufficient if its language so indicated the consideration that it could be argued out or inferred, and very much of nice criticism and narrow distinction followed as a result. (*Rogers* v. *Kneeland*, 10 Wend. 251 ; 13 id. 114.) The Revised Statutes sought to remedy the difficulty by an amendment requiring the consideration to be expressed, but the question whether in each case it was expressed, or what was a sufficient expression, led to renewed and continual litigation. It was soon held that the words "for value received" were enough to satisfy the requirement (*Miller* v. *Cook*, 23 N. Y. 495), and in 1863 the legislature struck out the clause, and restored the section to its old form.

But in all the current of authority in this State, previous to that final amendment, it was steadily ruled that the memorandum must contain the whole agreement, and all its material terms and conditions, not indeed in detail and with absolute precision, but substantially, and so that one reading the memorandum could understand from that what the agreement really was. In *Wright* v. *Weeks* (25 N. Y. 159), which preceded the amendment of 1863 but a few years, that doctrine was declared in very strong terms and as entirely settled. But the change of 1863 has given rise to a new question, and bred in the courts a wide difference of opinion. In *Speyers* v. *Lambert* (6 Abb. [N. S.] 309), the General Term of the Superior Court held that the effect of striking out the clause requiring the consideration to be expressed was not merely to restore the law as it was before the words were inserted ; that is to say, that the consideration must appear in the agreement, but might be argued out or inferred from its terms ; but to go

further than that, and make wholly and entirely unnecessary any statement of the consideration at all. That was said, however, in a case where the consideration was rendered at the moment in which the contract took effect, so that such contract was executory upon one side only, and not upon both. The exact contrary of this construction was held in *Castle* v. *Beardsley* (10 Hun, 343), and the remark of Bingham, in his work on Contracts for the Sale of Real Property (363), was cited with approval, that "it is certainly a singular way of construing a statute that has been once amended and then again amended by striking out the amendment, to mean something different from what it did before it was amended at all." What was said in *Evansville National Bank* v. *Kaufmann* (93 N. Y. 273) was not at all intended to decide the question upon which the courts have thus differed. The guaranty there was special and without consideration in fact, and the question now under discussion was not before the court. Very early it was doubted whether the amendment of 1830 at all changed the law (*Church* v. *Brown*, 21 N. Y. 331, per COMSTOCK, J.), and it is extremely difficult to answer the logic of the doubt. In that view of the subject, neither amendment changed the law, and the presence or absence of the omitted clause was alike immaterial. But if the amendment of 1830 worked any change, it was no more than this : that the consideration should no longer be implied from the language of the instrument, but should be expressed in it. (*Brewster* v. *Silence*, 8 N. Y. 207.) And the subsequent omission of the inserted clause would seem only to indicate a legislative intent not to require a definite expression of consideration, and leave the contract good if one could be implied or inferred from its terms. (Reed on Stat. of Frauds, § 423.) But whatever else may be said of the amendment of 1863, we are quite sure that it cannot be understood to destroy and annul the requirement that the note or memorandum must contain all the substantial and material terms of the contract between the parties. It must show on its face what the whole agreement is so far as the same is executory, and remains to be performed, and rests upon unfulfilled promise.

Down to the amendment of 1863 no case wandered from that rule, so far as we have been able to discover ; and since that date it has been re-stated and enforced in this court.   In *Newberry* v. *Wall* (65 N. Y. 484), a letter admitting the purchase of goods by the writer from the person to whom it was written was held to be an insufficient note or memorandum, because it did not " express any consideration or terms of the purchase," " and it is impossible to say from the contents of the letter what the contract in fact was."   And again in *Stone* v. *Browning* (68 N. Y. 604), RAPALLO, J., said of a similar letter admitting the agreement to purchase :  " It does not state the price or any of the terms of the contract.   These deficiencies cannot be supplied by oral evidence.   All the essential parts of the contract must be evidenced by the writing."   Now those essential parts cannot be omitted, because, in addition to constituting such material elements, they constitute also a consideration of the contract.   The agreement of the defendants in this case was not merely to pay so much money to plaintiff. It was to pay him that money for his services as salesman to be thereafter rendered.   For what the payment was to be made constituted a material and essential element of the agreement on the part of the defendants; an important condition of the contract on their side.   Their agreement was not absolute to pay the money.   It was conditioned upon the rendition of the stipulated services.   Any memorandum which omits the condition falsifies the agreement which they actually made, and represents them as agreeing to pay the money absolutely when they did not so contract.   It is no answer that the omitted condition, coupled with the other party's promise of performance, constituted a consideration for his own agreement, and so need not be expressed.   If we were to grant that, and follow *Speyers* v. *Lambert* to its full extent, it would only justify an omission from the memorandum of plaintiff's promise to perform the services, and not of defendants' condition modifying and limiting and measuring their own promise.   As in the cases last cited in our own reports, the agreement was not an absolute agreement to purchase irrespective of price, but to

buy at an agreed and specified price, so here the agreement was not an absolute agreement to pay so much money, but to pay it upon condition that certain specific services were rendered. And if we conceded that the consideration might be wholly omitted from the memorandum, it would still be requisite that all the essential and material elements of defendants' own agreement should be stated, and they are not stated where the very condition upon which they were to pay at all is omitted, and the subject-matter of their agreement is absent.

And that brings us to the question whether the memorandum on its face stated the actual contract which the defendants made; or whether from the memorandum we can determine what the real contract between the parties was. The actual agreement was that the defendants would pay yearly the sums specified in the memorandum for the services of the plaintiff as a salesman, to be rendered for three years, and the inquiry is whether that contract is stated in the memorandum. The writing begins with the words " preserve this," and continues thus : " The understanding with Mr. Drake is as follows : 2,000 dollars for the first year ; 2,500 dollars for the second year sure, and provided the increase sales shall warrant it, he is to have $3,000. 3 year in proportion to business as above." On the face of this writing the contract of the defendants with its essential terms and conditions does not at all appear, unless we yield to the construction very ingeniously suggested and forcibly argued on behalf of the appellant, that the words "for the first year" mean, for the first year's time of the plaintiff, and so on through the other stipulations. It is said the word " year " means a period of time, and must be held to refer to the plaintiff's time, using that word in the sense of services, and the construction is sought to be strengthened by parol evidence, showing that plaintiff was a salesman, and defendants manufacturers. There are no technical or ambiguous words in the memorandum requiring explanation, and we cannot resort to parol evidence to insert in the writing what is not there. ( *Wright* v. *Weeks, supra.*) Confining our attention to what the memorandum says, we observe that its language is equally applicable to many contracts

entirely different from that actually made.   Although plaintiff
is a salesman, he may have invented or purchased a patent val-
uable for the use of the defendants, and bargained to give them
that use for three years, in return for which plaintiff was to
have $2,000 for the first year, $2,500 for the second year,
sure, and provided the increase sales shall warrant it he is to
have $3,000.   Third year in proportion to business as above.
Or the plaintiff may have rented to the defendants a store or
factory for three years, and the memorandum recite the rental.
And so the illustrations might be multiplied.   Nothing in the
writing indicates which of all the possible contracts was intended,
or identifies the one really made.   To a person depending
wholly upon the writing, the real contract made is impossible
to be ascertained.   And here comes in the difficulty against
which the statute was aimed.   If the memorandum be held
sufficient, any falsehood or perjury on the part of the plaintiff
might apply it to an agreement never made or thought of, and
against that the memorandum would not furnish the least pro-
tection.   And there is a further difficulty as to the third year,
which is the only one here in controversy.   Precisely what the
final clause means it is not easy to say.   It does not provide in
terms for any fixed salary, but makes the payment dependent
upon the business in proportion to the rates above stated.   No
evidence was given showing the amount of business.   We can-
not hold this memorandum sufficient without a dependence
upon parol evidence which would practically nullify the stat-
ute, and since we have held that one party may be bound by
his signature while the other party, not signing, is not bound
at all (*Mason* v. *Decker*, 72 N. Y. 595), it becomes very im-
portant for the party who does sign and is bound, that the rule
should be firmly adhered to which requires the real contract to
be stated with its substantial terms and conditions.   We, there-
fore, agree with the conclusion of the General Term.

The order of the General Term should be affirmed and judg-
ment absolute rendered for the defendants, with costs.

All concur.

Order affirmed, and judgment accordingly.